RECEIVED

**IN THE UNITED STATES DISTRICT COURT** P 1: 09
**FOR THE MIDDLE DISTRICT OF ALABAM**
**NORTHERN DIVISION** DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| SUSAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER: |
| v. | ) | 2:17-cv-297 |
| | ) | |
| OFFICE OF THE ATTORNEY GENERAL, | ) | |
| STATE OF ALABAMA, a governmental | ) | |
| agency; and LUTHER STRANGE, | ) | |
| his individual capacity. | ) | |
| | ) | **PLAINTIFF DEMANDS A** |
| | ) | **TRIAL BY STRUCK JURY** |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff Susan Smith ("Plaintiff" or "Smith") and brings this action for legal and equitable relief to address unlawful employment practices and violations of Federal law by Defendants, the Office of the Attorney General of the State of Alabama, and Luther Strange, the former Attorney General of the State of Alabama.

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. ¶2000e, *et seq.*

1

2.     Venue is proper because the Plaintiff worked for the Office of the Attorney General of the State of Alabama in Montgomery County, Alabama.

## PARTIES

3.     Plaintiff Susan Smith is a female resident of the State of Alabama and is over the age of 19.

4.     Defendant Office of the Attorney General, State of Alabama ("OAG"), is a governmental office created by the Constitution of the State of Alabama.

5.     OAG was and is Plaintiff's employer for purposes of Title VII of the Civil Rights Act of 1964, as amended.

6.     OAG was and is Plaintiff's employer for purposes of Title VII of the Equal Pay Act.

7.     Defendant Luther Strange is resident of the State of Alabama and is over the age of 19.

8.     From January 17, 2011 through February 9, 2017, Defendant Strange served as the Attorney General for the State of Alabama.

## EXHAUSTION OF ADMINSITRATIVE REMEDIES

9.     Smith filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on July 11, 2014. (A copy of the Charge of Discrimination is attached as Exhibit A).

2

10.    The EEOC issued a Dismissal and Notice of Rights to Smith on February 4,

2017.  (A copy of the Dismissal and Notice of Rights is attached as Exhibit B).

11.    The EEOC mailed the Dismissal and Notice of Rights on February 6, 2017.

(A copy of the postmarked enveloped that contained the Dismissal and Notice of

Rights is attached as Exhibit C).

12.    Smith filed this action within 90 days from February 4, 2017

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
## GENDER DISCRIMINATION

13.    Smith holds a Bachelor of Science degree in Criminal Justice from Auburn

University at Montgomery.

14.    Smith began her career in law enforcement in 1986.

15.    Smith began her career in law enforcement with the City of Selma Police

Department in a patrol position.

16.    While working with the City of Selma Police Department, Smith earned the

rank of Lieutenant.

17.    Conducting investigations was an essential job duty of all positions Smith

held with the City of Selma Police Department.

18.    In 2007, Smith left the Selma Police Department to join the OAG as an

investigator.

19.    The OAG hired Smith at an annual salary of $41,872.80.

3

20.   In September 2008, after Smith's probationary period ended, the OAG increased her pay to $43,333.92 a year.

21.   On November 1, 2014, the OAG increased Smith's pay to an annual salary of $47,757.60.

22.   During her tenure with the OAG, Smith has been nominated multiple times for Investigator of the Year.

23.   During her tenure with the OAG, Smith has received positive performance evaluations.

24.   Chief Investigator Tim Fuhrman told Smith her statistics carry the office and the attorneys in the office regularly ask for her to be assigned to their cases.

25.   In November 2010, Defendant Strange won election to the position of Attorney General for the State of Alabama.

26.   When Defendant Strange took office in January 2011, he made M. Matt Hart as a Deputy Attorney General.  Sometime in 2012, Strange made Hart the Division Chief for the Special Prosecutions Division.

27.   In February 2011, the OAG hired James Murray to perform the same job duties and responsibilities as Smith, but at twice the rate of pay.

28.   Smith questioned her superiors why Murray, a male, earned more than her.

29.   Murray worked for a year with Mrs. Smith in her division without working a single case; he was assigned to two cases with other agents.

4

30.     Smith requested a raise, but the request was denied.

31.     The OAG told Smith there was no money in the budget to award her a raise.

32.     In 2012, the OAG established the Special Prosecutions Unit.

33.     The OAG moved Murray to the Special Prosecutions unit, but his job duties
and responsibilities remained the same as Smith's.

34.     In the OAG, an investigator's unit assignment dictates the subject matter of
what the investigator investigates, but the investigative duties and responsibilities
are the same among the unit.

35.     In late 2012, Senior Special Agent Assiee Webb retired, opening up a Senior
Special Agent position.

36.     Smith inquired about filling the position but was told that the OAG was not
promoting at that time.

37.     Nonetheless, Smith applied to fill the position.

38.     In April 2013, Smith applied for the position of Senior Special Agent.

39.     Smith ranked third on the promotion list.

40.     Murray did not meet the existing criteria needed to be promoted because he
was an appointed employee.

41.     After Smith applied and Murray expressed an interest in the position, the
OAG changed the criteria for the Senior Special Agent position.

5

42.    Special Agent with the OAG, Darrell Sambor, shared with Smith that the agents in the Special Prosecution Unit were told there was no need to apply for the Senior Special Agent because Deputy Attorney General Matt Hart said the job would be given to James Murray.

43.    The OAG changed the criteria for the Senior Special Agent position to qualify Mr. Murray for the promotion.

44.    Smith questioned Chief Investigator Tim Fuhrman during the next division meeting about the criteria being changed to promote Murray.

45.    Fuhrman dodged Smith's inquiries by stating he did not know anything about it.

46.    Furhman was one of the persons responsible for changing the criteria.

47.    The OAG pre-selected Mr. Murray for the promotion.

48.    In the Summer of 2013, Smith again asked the OAG for a raise.

49.    In response, Deputy Attorney General Kevin Turner said the state did not have money for raises.

50.    Smith asked for a position as a Special Investigator with a salary similar to James Murray's.

51.    The OAG told Smith there was no position available and no money available for a raise.

52.    In the Fall of 2013, the OAG hired Keith Baker as an investigator.

53.     The OAG hired Baker at a salary of approximately $82,000 a year.

54.     Baker's duties and responsibilities were the same as Smith's.

55.     Baker was and is unable to testify in Court due to allegations of misconduct.

56.     While employed as an investigator by the federal government, Baker had an
extramarital affair with a court reporter, a breach of ethics, and then engaged in a
coverup of the same.

57.     Baker's transgressions render him useless in court because he cannot testify
as to anything he may have investigated.

58.     Testifying in court is an essential job duty for investigators.

59.     Despite the limitations placed on Baker through his past misconduct, the
OAG paid him almost double what it paid Smith (who has an unblemished record)
for doing the same duties and responsibilities.

60.     In January 2014, a promotional register opened for Senior Special Agent.

61.     Smith was qualified to hold the position of Senior Special Agent.

62.     On or about April 1, 2014, the OAG promoted Murray to senior Special
Agent.

63.     Smith learned there were two registers established for Senior Special Agent:
the promotional register and an open competitive register that had never existed
prior to 2014.

7

64.    The only way Murray could be promoted was through the creation of the open competitive register.

65.    In 2014, the OAG promoted James Lambert to Senior Special Agent.

66.    Special Agent Shawn Smith shared with Smith that Lambert did not apply for the promotion at first because he knew he did not meet the qualifications to apply of having three evaluations.

67.    The OAG hired Lambert in February 2013.

68.    Lambert's probationary period ended in February 2014.

69.    The OAG promoted Lambert on July 8, 2014.

70.    At the time of his promotion, the only evaluation the OAG had given Lambert was on January 15, 2014.

71.    Lambert's evaluation score was 34.6.

72.    The policies and practices applicable to promotions with the OAG require the employee receive three evaluations to be eligible for promotion, and the scores of those evaluations should be averaged for the promotion.

73.    Smith's prior evaluation scores (which were to be averaged) were:  37.3 (8/14/14), 33.6 (8/13/13), 34.6 (8/27/12), and 32.7 (8/24/11).

74.    Fuhrman told Lambert to apply for the promotion.

75.    Fuhrman extended the window to accept applications for the position to allow Lambert to apply.

76.   Just as with Murray, the OAG pre-selected the person to fill the position.

77.   After Lambert's promotion, in July 2014, Smith requested a review of the personnel files of the persons listed on both promotion registers since she was ranked on both.

78.   When Smith reviewed Murray's file, there was no Senior Special Agent Ranking list in his personnel file or any indication of his score.

79.   On August 13, 2014, the OAG issued a performance appraisal to Smith noting she has performed at an exceptional level.

80.   Smith performed duties that are and were substantially the same as Murray, Baker and Lambert, but the three men are and were paid at higher rates than her.

81.   The OAG discriminated against Smith based on her gender by paying her less than James Murray, James Lambert and Keith Baker.

82.   The OAG discriminated against Smith based on her gender by promoting Murray in April 2014 and Lambert in July 2014 to the position of Senior Special Agent.

83.   The OAG's discrimination against Smith based on her gender caused her injury.

WHEREFORE, PREMISES CONSIDERED, Smith requests entry of an Order entering a judgment against the OAG for violation of Title VII's prohibition against gender discrimination and awarding:

a.    Backpay to be determined by the trier of fact;

b.    Compensatory damages to be determined by the trier of fact;

c.    Injunctive relief including promotion, wage adjustment and/or front-

pay;

d.    The relief which is fair, just and equitable;

e.    Costs, including a reasonable attorney's fee.

## COUNT II
## EQUAL PAY ACT

84.    Smith adopts and incorporates by reference the factual allegations set forth

in paragraphs 5-83.

85.    The OAG is subject to the Equal Pay Act.

86.    Smith worked as an investigator for the OAG.

87.    James Murray worked as an investigator for the OAG.

88.    Smith and Murray performed work in a position requiring equal skill, effort

and responsibility under similar working conditions.

89.    The OAG paid Smith less than Murray.

90.    James Lambert worked as an investigator for the OAG.

91.    Smith and Lambert performed work in a position requiring equal skill, effort

and responsibility under similar working conditions.

92.    The OAG paid Smith less than Lambert.

93.    Keith Baker worked as an investigator for the OAG.

94.    Smith and Baker performed work in a position requiring equal skill, effort and responsibility under similar working conditions.

95.    The OAG paid Smith less than Baker.

96.    At the time the OAG paid Smith less than Baker, Murray and Lambert, the OAG knew that the Equal Pay Act required men and women in the same workplace be given equal pay for equal work.

97.    The OAG's violation of the Equal Pay Act was willful and intentional.

WHEREFORE, PREMISES CONSIDERED, Smith requests entry of an Order entering a judgment against the OAG for violation of the Equal Pay Act and awarding:

    a.    Backpay to be determined by the trier of fact;

    b.    Liquidated damages to be determined by the trier of fact;

    c.    Injunctive relief;

    d.    Declaratory relief;

    e.    The relief which is fair, just and equitable;

    f.    Costs, including a reasonable attorney's fee

## COUNT III
## 42 U.S.C. §1983
## (Luther Strange)

98.    Smith adopts and incorporates by reference the factual allegations set forth in paragraphs 5-83.

11

99.   Defendant Strange was the Attorney General for the State of Alabama when Keith Baker's rates of pay were set.

100.   Defendant Strange was the Attorney General for the State of Alabama when James Murray's rates of pay were set.

101.   Defendant Strange was the Attorney General for the State of Alabama when James Lambert's rates of pay were set.

102.   Defendant Strange was the Attorney General for the State of Alabama when Smith's requests for raises were denied.

103.   As Attorney General for the State of Alabama, Defendant Strange had the ultimate authority to set the rate of pay for persons working in the OAG.

104.   Smith performed the same work as Baker, Murray and Lambert but received less compensation than the men.

105.   Defendant Strange made the decision to pay male investigators, including, but not limited to, Baker, Murray and Lambert, at a higher rate of pay than Smith.

106.   Under the Fourteenth Amendment to the United States Constitution, Smith had and has a right to equal protection under the law regardless of her gender.

107.   Defendant Strange, acting under the color of state law, deprived Smith of her constitutional right to equal treatment under the law by paying her less than male investigators.

108.   Defendant Strange was Attorney General for the State of Alabama in 2014.

12

109.   As Attorney General for the State of Alabama, Defendant Strange was the ultimate decision maker for promotions in the OAG.

110.   Defendant Strange made the decisions to promote Murray and Lambert to the positions of Senior Special Agent over Smith.

111.   Smith's qualifications for the position of Senior Special Agent were equal or superior to those of Murray and Lambert.

112.   Gender was a factor in the promotional decisions for Senior Special Agent in 2014.

113.   Defendant Strange, acting under the color of state law, deprived Smith of her constitutional right to equal treatment under the law by discriminating against Smith based on her gender in promoting men to the position of Senior Special Agent.

WHEREFORE, PREMISES CONSIDERED, Smith requests entry of an Order entering a judgment against Luther Strange in his individual capacity under 42 U.S.C. §1983 for violating Smith's rights under the Constitution of the United States of America and awarding:

a.     Backpay to be determined by the trier of fact;

b.     Compensatory damages to be determined by the trier of fact;

c.     Punitive damages to be determined by the trier of fact;

d.     Injunctive relief;

e.      Declaratory relief;

f.      That relief which is fair, just and equitable;

g.      Costs, including a reasonable attorney's fee.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**


Heather Newsom Leonard
AN ATTORNEY FOR PLAINTIFF
HEATHER LEONARD, P.C.
P.O. Box 43768
Birmingham, AL 35243
(205) 977-5421- voice
(205) 278-1400 - facsimile
Email: Heather@HeatherLeonardPC.com

Alicia K. Haynes
AN ATTORNEY FOR PLAINTIFF
HAYNES & HAYNES, PC
1600 Woodmere Drive
Birmingham, AL 35226
205-879-0377
Fax: 205-879-3572
Email: akhaynes@haynes-haynes.com

**Please Serve Via Certified Mail:**

Office of the Attorney General for the State of Alabama
c/o Steve Marshall, Attorney General for the State of Alabama
501 Washington Avenue
Montgomery, AL 36130

Luther Strange
G-12 Dirksen Senate Office Building
Washington, DC 20510